IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ESTATE OF ANTONIO J. PALUMBO
DECEASED *PNC BANK, NATIONAL
ASSOCIATION, EXECUTOR*,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant.

10cv0760
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION
REGARDING PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES AND COSTS (DOC. NO. 42)**

Before the Court is Plaintiff's Motion for Attorneys' Fees and Costs. This Motion is predicated upon the Court's Opinion and Order of March 9, 2011, wherein this Court determined that Plaintiff was entitled to a refund of the taxes that it paid on $11,721.141.00. See doc nos. 39-40.

### I. FACTUAL BACKGROUND

**A. Prior Procedural and Factual Background**

The Estate of Antonio Palumbo and its Executor (hereinafter "Plaintiff") brought this action seeking a refund (plus accrued interest) of an alleged overpayment of federal estate taxes. Plaintiff paid federal estate taxes on an amount – $11,721,141.00 – that was ultimately paid to the A.J. and Sigismunda Palumbo Charitable Trust (hereinafter "the Charitable Trust"), a charitable trust created by Mr. Palumbo during his lifetime. This payment was made to the Charitable Trust under the terms of a settlement agreement negotiated (primarily) between the Charitable Trust and Mr. Palumbo's son and intestate heir, although all legatees signed the agreement.

Plaintiff's Complaint alleged Plaintiff was entitled to a return of the taxes paid on the $11,721,141.00 (plus interest), claiming it constituted a charitable deduction pursuant to Section 2055 of the Internal Revenue Code (26 U.S.C. § 2055). Plaintiff filed a Motion for Summary Judgment in this regard advancing law and authority in support of its position.

Defendant countered with its own Motion for Summary Judgment, contending that the $11,721,141.00 amount was paid by operation of a settlement agreement, not by operation of a residuary clause in Mr. Palumbo's Last Will and Testament, and therefore could not be claimed as a charitable deduction from the Estate.

In light of these cross-motions, the sole issue before this Court was whether the sum of $11,721,141.00 qualified as a charitable deduction under Section 2055. This Court first, after reviewing the legislative history to 2055 and the facts presented in the parties' respective Motions for Summary Judgment, declined to narrowly construe 2055. Next, this Court thoroughly analyzed the case law and other authority cited by both parties and determined that: (1) that the 1999 Will was the last written iteration of Mr. Palumbo's intent; (2) that prior testamentary documentation provided for a residuary estate, and that in all prior documentation, the residuary estate was left to the Charitable Trust; (3) Mr. Palumbo's attorney admitted that he made a scrivener's error when preparing the 1999 Will, in that he failed to include a provision for the residuary estate; and (4) after the dispute over the residuary estate arose, arm's length negotiations ensued which resulted the settlement agreement through which the Charitable Trust received the sum of $11,721,141.00.

Based on the evidence of record, the Court further determined that: (1) there was <u>no</u> evidence to indicate that the testator intended to forego a residuary clause and/or disinherit the Charitable Trust; (2) the testator's attorney admitted to making a scrivener's error when drafting

the 1999 Will and failing to include a residuary clause; (3) all settlement negotiations among the legatees over the residuary estate were held at arms-length; (4) all of the legatees signed the settlement agreement which was approved by the Orphan's Court, and (5) there was no evidence of any collusion among the legatees nor any collusion on the part of their respective attorneys. The Court also repeatedly noted that all prior testamentary instruments prepared for Mr. Palumbo contained provisions for the residuary estate to pass to the Charitable Trust, thereby evidencing Mr. Palumbo's intent to devise and bequeath his residuary estate to the Charitable Trust.

Based on all of these key facts and the applicable law, this Court found that the sum of $11,721,141.00 should have been deducted from the gross estate as a charitable donation under Section 2055 of the Internal Revenue Code. See this Court's Opinion and Order, doc. nos. 39-40.

**B. Factual Information Relevant to Attorney Fee Request**

In light of the Court's Order (doc no. 40), Plaintiff now seeks an award of attorneys' fees and costs as the prevailing party under Section 7430 of the Internal Revenue Code. See Motion for Attorneys' Fees and Costs and Brief In Support, doc. nos. 42-43. Plaintiff timely filed its Motion for Attorneys' Fees and Costs and provided factual information suggesting the precise amounts that were incurred in costs and attorneys' fees stemming from litigating this matter during the administrative proceedings held within the Internal Revenue Service ("IRS") as well as the cost of litigating the matter before this Court. See doc. no. 44. Plaintiff also provided argument suggesting that Defendant's position throughout the litigation was not substantially justified, one of the many requirements that must be met in order for the Court to award attorneys' fees and costs to Plaintiff.

Defendant disputes that an award of attorneys' fees is proper. See Defendant's Brief in Opposition to the Motion for Attorneys' Fees and Costs, doc. no. 45.

First, Defendant contends that attorneys' fees and costs should not be awarded because the real party in interest is the Plaintiff – not the Charitable Trust – and the Plaintiff admits that the Estate had a net worth of over $2,000,000.00, which statutorily bars it from recovery. Defendant notes that Plaintiff attempts to circumvent this statutory bar by arguing that the Charitable Trust, not Plaintiff, was and is the "real party in interest" with respect to the issue previously adjudicated and decided by this Court. Defendant counters by arguing that Plaintiff, not the Charitable Trust, is the taxpayer who incurred the tax in the first place and thus is the entity entitled to the refund ordered by this Court, thereby rendering it (Plaintiff) the real party in interest.

Second, Defendant contends that its position throughout this litigation was substantially justified and because Defendant was substantially justified, Plaintiff (and/or the Charitable Trust) is statutorily barred from recovering attorneys' fees and costs.

The final argument advanced by Defendant is that Plaintiff failed to submit any evidence: (1) substantiating the work actually performed by its attorneys, and/or (2) supporting its claims for fees in excess of the statutory cap on the hourly rate of attorneys.

Plaintiff filed a Reply wherein it cited additional case law supporting its argument that the Charitable Trust, not Plaintiff, was the real party in interest and therefore contends that the $2,000,000.00 net worth bar does not apply to preclude recovery of attorneys' fees and costs. Secondly, Plaintiff reiterates its argument that Defendant was not "substantially justified" in adhering to its position throughout prior litigation. Finally, Plaintiff argues that it submitted

plenty of evidence to support both the actual work performed by the attorneys, and the basis for seeking fees in excess of the statutory cap.

This Court after thorough review of the submissions by the parties, the evidence proffered, and the law and authority governing this matter, finds in favor of Defendant.

## II. STANDARD OF REVIEW

The pertinent portions of title 26 of the United States Code section 7430 state:

> (a) In general.--In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for--
>
> (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and
>
> (2) reasonable litigation costs incurred in connection with such court proceeding.
>
> \* \* \*
>
> (c) Definitons.--For purposes of this section--
> (4) Prevailing party.--
>
> (A) In general.--The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved)--
>
> (i) which--
>
> (I) has substantially prevailed with respect to the amount in controversy, or
>
> (II) has substantially prevailed with respect to the most significant issue or set of issues presented, and
>
> (ii) which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28, United States Code (as in effect on October 22, 1986) except to the extent differing procedures are

established by rule of court and meets the requirements of section 2412(d)(2)(B) of such title 28 (as so in effect).

* * *

(B) Exception if United States establishes that its position was substantially justified.—

(i) General rule.--A party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceeding was substantially justified.

(ii) Presumption of no justification if Internal Revenue Service did not follow certain published guidance.--For purposes of clause (i), the position of the United States shall be presumed not to be substantially justified if the Internal Revenue Service did not follow its applicable published guidance in the administrative proceeding. Such presumption may be rebutted.

(iii) Effect of losing on substantially similar issues.--In determining for purposes of clause (i) whether the position of the United States was substantially justified, the court shall take into account whether the United States has lost in courts of appeal for other circuits on substantially similar issues.

(iv) Applicable published guidance.--For purposes of clause (ii), the term "applicable published guidance" means—

(I) regulations, revenue rulings, revenue procedures, information releases, notices, and announcements, and

(II) any of the following which are issued to the taxpayer: private letter rulings, technical advice memoranda, and determination letters.

* * *

(D) Special rules for applying net worth requirement.--In applying the requirements of section 2412(d)(2)(B) of title 28, United States Code, for purposes of subparagraph (A)(ii) of this paragraph--

(i) the net worth limitation in clause (i) of such section shall apply to--

> > (I) an estate but shall be determined as of the date of the decedent's death, and

26 U.S.C.A. § 7430

The subsection of section 2412 of Title 28 as referenced above states:

> (2) For the purposes of this subsection—
>
> > (B) "party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), may be a party regardless of the net worth of such organization or cooperative association or for purposes of subsection (d)(1)(D), a small entity as defined in section 601 of Title 5;

28 U.S.C.A. § 2412(d)(2)(B).

### III. DISCUSSION

Based on the foregoing, this Court need not reach the question of net worth, and more specifically, who is the real party in interest in terms of determining net worth, because this Court finds that Defendant was substantially justified in its position. Similarly, this Court need not ascertain the reasonableness of the fees and costs awarded because Defendant was substantially justified in its position.[1] Based on the standard set

---

[1] Although this Court need not reach a decision with respect to the merits of the attorneys' fees and costs incurred during the pendency of this litigation, this Court did review each time and cost entry, and based upon this Court's private practice experience of reviewing and approving time sheets and expenses of $1 million to $5 million in billings per year for numerous years, plus reviewing and approving fee statements of attorneys hired to serve as local counsel, the Court finds that the time expended was meritorious. However, as stated in the main portion of the Opinion, this Court will not comment on the rate of the fee – except to note that the hourly rates

forth above, this Court declines to award attorneys' fees and costs because the Defendant was substantially justified in the position it held during all prior proceedings, including those held before this Court.

The question before this Court is a simple one: Was Defendant "substantially justified" in its position in the prior proceedings? If so, then an award of attorneys' fees and costs must be precluded. If not, then the other matters raised by Defendant (*i.e.*, the real party in interest and the amount of fees and costs to be awarded) must be addressed.

The Internal Revenue Code specifically provides the criteria necessary to ascertain whether Defendant was substantially justified in advancing its position:

> (B) Exception if United States establishes that its position was substantially justified.—
>
>> (i) General rule.--A party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceeding was substantially justified.
>>
>> (ii) Presumption of no justification if Internal Revenue Service did not follow certain published guidance.--For purposes of clause (i), the position of the United States shall be presumed not to be substantially justified if the Internal Revenue Service did not follow its applicable published guidance in the administrative proceeding. Such presumption may be rebutted.
>>
>> (iii) Effect of losing on substantially similar issues.--In determining for purposes of clause (i) whether the position of the United States was substantially justified, the court shall take into account whether the United States has lost in courts of appeal for other circuits on substantially similar issues.
>>
>> (iv) Applicable published guidance.--For purposes of clause (ii), the term "applicable published guidance" means—

---

although they exceed the statutory cap, are consistent with the marketplace for fees for very experienced tax attorneys such as Mr. Prosperi – nor will it address what total amount would be appropriate, because of the statutory bar prohibiting any such recovery due to Defendant's substantially justifiable position throughout the litigation.

> (I) regulations, revenue rulings, revenue procedures, information releases, notices, and announcements, and
>
> (II) any of the following which are issued to the taxpayer: private letter rulings, technical advice memoranda, and determination letters.

26 U.S.C.A. § 7430(c)(4).

Using the above-cited portion of the section 7340(c)(4)(B), Plaintiff contends that section 7430(c)(4)(B)(ii) and (iii) apply here.

With respect to section 7340(c)(4)(B)(ii), Plaintiff claims that the position of Defendant (the United States) was not substantially justified because the IRS failed to follow its own applicable published guidance during the administrative proceedings. Plaintiff specifically points to Revenue Ruling 89-31, claiming this is the published guidance that the IRS ignored during the administrative proceeding.

Revenue Ruling 89-31 states in pertinent part:

HOLDING

> If, in settlement of a bona fide will contest, a decedent's estate makes an immediate payment to a qualifying charity in satisfaction of the charity's claim to a split interest remainder that would not be deductible under section 2055(e)(2)(A) of the Code, the estate is entitled to a charitable deduction under section 2055.

Revenue Ruling 89-31.

Just reading this portion of Revenue Ruling 89-31, it appears as though Revenue Ruling 89-31 supports Plaintiff's contention that Defendant was not substantially justified in its position. However, the fact pattern surrounding this holding reads as follows:

> The decedent died testate in 1987. Under the will, which was executed in 1986, the decedent bequeathed the residue of the estate to a trust under which the trust income was payable to A for life with the remainder payable to B charity, an

9

organization described in sections 170(c) and 2055(a) of the Code. A was the decedent's child.

Id.

Under the facts present in this case, the charity (*i.e.* the Charitable Trust) was named in all prior testamentary documentation, including a prior Will, but no residuary clause was included in the 1999 Will which was the will that was actually probated. As Defendant argued before this Court, looking solely at the four corners of the 1999 Will, the Charitable Trust had no legal standing as a residuary estate legatee. See doc. no. 33, p. 8 ("The Trust was entitled to nothing under the Final Will. (See Ex. 1.)".) Because the facts of this case differed from those in the fact pattern in Revenue Ruling 89-31, and because those different facts formed the very basis for Defendant's position throughout the litigation of this matter, this Court does not find that Revenue Ruling 89-31 proves that Defendant was not substantially justified in pursuing its position.

However, Revenue Ruling 89-31 is not the only "published guidance" expressly cited by Plaintiff in support of its argument that Defendant was not substantially justified under subsection 7430(c)(4)(B)(ii). Plaintiff contends Revenue Ruling 145 also constitutes "published guidance" which further illustrates how Defendant was not substantially justified in pursuing its position. See doc. no. 43, p. 7.

Revenue Ruling 145 holds that "[w]here a charity is legatee under a will and, as such contests the probate of a later will and such contest is settled by agreement with the parties in interest, the amount deductible for testamentary charitable gifts . . . is calculated on the basis of what the charity actually received." Revenue Ruling 145 (1953). The Court finds that this fact pattern is substantially similar, with the instant case, if not on all four corners.

10

In Revenue Ruling 145, the charities were residuary legatees under one will. A second will, one that was admitted to probate, changed the residuary legatees. The former legatees, including the charities, appealed the probate court's decision to probate the second will, but before judgment was entered in the matter, the parties reached a settlement. Under the terms of the settlement agreement the charities received substantial amounts to settle their claims. This Revenue Ruling reads:

> In the instant case the status of the charities contesting the probated will was that of legatees under the prior will which they proffered as the decedent's last will. Such status commanded the settlement agreement and was recognized by it. . . .
>
> In view of the foregoing, it is held that where a charity is legatee under a will and, as such, contests the probate of a later will and such contest is settled by agreement with the parties in interest, the amount deductible for testamentary charitable gifts under section 812(d) of the Internal Revenue Code is calculated on the basis of what the charity actually received.

Rev. Rul. 145 (1953).

Defendant claims that Revenue Ruling 145 was overruled by <u>Commissioner v. Estate of Bosch</u>, 387 U.S. 456 (1967). See doc. no. 45, p. 9. However, as noted by Plaintiff, the Internal Revenue Service never expressly "revoked nor held that Ruling to be superseded." Yet, it is clear that Defendant relied throughout this litigation upon the holding in <u>Bosch</u>, a United States Supreme Court decision which post-dated Revenue Ruling 145 by fourteen years. See doc. no. 33, pp. 3-7. Although this Court did not agree with Defendant's interpretation and/or application of <u>Bosch</u> under the facts present here, and even though the Service did not expressly revoke or supersede Revenue Ruling 145, Defendant's reliance on <u>Bosch</u> does not render its action in this matter unjustifiable.

In addition, the Court notes that while Revenue Ruling 145, at a minimum, implies that a charitable deduction is to take place under circumstances akin to those present in this case,

11

Revenue Ruling 89-31, published well after both Revenue Ruling 145 and the Bosch decision, fails to mention either one. In this Court's opinion, Defendant was substantially justified in arguing that the legal posture concerning the "deductibility" of charitable contributions via a settlement agreement evolved from the time of Revenue Ruling 145 (1953) to the time Bosch was decided (1967). Because Revenue Ruling 89-31 contained no reference to either the prior Revenue Ruling or the Bosch case, Defendant seemingly found itself in a grey area. For this reason as well as the foregoing, this Court does not agree with Plaintiff that Defendant was not substantially justified in advancing its position.

Next, Plaintiff contends that Defendant was not substantially justified in pursuing its position under subsection 7430(c)(4)(B)(iii). Plaintiff contends that Defendant's position throughout this litigation was inconsistent with the decisions reached in the United States Court of Appeals for the Fifth Circuit in Estate of Warren v. Commissioner, 981 F.2d 776 (5th Cir. 1993) and the United States Court of Appeals for the Third Circuit in Dumont's Estate v. Commissioner, 150 F.2d 691 (3d Cir. 1945). Although this Court in its prior Opinion (see doc. no. 39) does cite to and rely upon these two cases – more heavily on Dumont's Estate than Warren – this Court does not agree that these cases prove that Defendant was not substantially justified in advancing its position during the course of this litigation.

First, this Court noted that in Dumont's Estate, the charity, Lafayette College, was named the residuary legatee in both wills. When the residuary clause in the later will was deemed void under Pennsylvania law, Lafayette College entered into a settlement agreement with the testator's next of kin (who would have inherited the residuary via laws of intestacy), the Court of Appeals for the Third Circuit held that the amount paid to Lafayette College was deductible as a charitable contribution.

Under the facts present here, unlike the facts in Dumont's Estate, the Charitable Trust was not a designated residuary beneficiary under the 1999 Will. In this case, this Court (based on all evidence of record) was able to ascertain that the testator's intent was to provide a residuary estate with the Charitable Trust as the legatee,[2] this fact differs from Dumont's Estate where it was unequivocal that the testator included Lafayette as a residuary legatee in the probated will. Thus, even though this Court disagreed with Defendant's overall position in this matter, because the facts between this case and Dumont's Estate were not identical, (*i.e.* here, there was no residuary clause, but there was such a clause – albeit one that was rendered void – in Dumont's Estate), this Court finds that Defendant was substantially justified in pursuing its position in this matter.

---

[2] This Court specifically held in its prior Opinion:

> Here, there is no dispute that the 1999 Will was the last written iteration of Mr. Palumbo's intent. However, the parties concur that prior testamentary documentation provided for a residuary estate, and that in all prior documentation, the residuary estate was left to the Charitable Trust. It is also uncontested that Mr. Palumbo's attorney has admitted that he made a scrivener's error when preparing the 1999 Will, in that he failed to include a provision for the residuary estate. Finally, although the parties do not agree on the extent of the dispute concerning the residuary estate which arose between Mr. Palumbo's son and the Charitable Trust after Mr. Palumbo's death, they do agree that after the dispute arose, arm's length negotiations ensued which resulted the settlement agreement at issue here. As noted above, under the facts of this case, the parties agree that the sum of $11,721,141.00 was paid to the Charitable Trust pursuant to this settlement agreement which was negotiated among counsel for several interested parties, but primarily by counsel for the Charitable Trust and counsel for Mr. Palumbo's son.
>
> Based on the evidence of record, and there being no evidence to the contrary, the Court finds that the negotiations were held at arms-length, that all of the legatees signed the settlement agreement (which was approved by the Orphan's Court), and there is no evidence of any collusion among the parties to the agreement nor any collusion on the part of their respective attorneys.

Doc. no. 39, p. 15.

Finally, with respect to the decision rendered by the Court of Appeals for the Fifth Circuit in <u>Warren</u>, this Court cited that case mainly for the proposition that marital deduction cases are not akin to charitable deduction cases. See doc no. 39, p. 8, fn. 1. Nevertheless, this Court notes that in <u>Warren</u>, the question was the amount of a charitable deduction, not whether a charitable contribution had actually been made. Therefore, <u>Warren</u> does not support the Plaintiff's assertion that Defendant was not substantially justified in pursuing its position.

## IV. CONCLUSION

Based upon the foregoing law and authority, this Court determines has Plaintiff has not met its burden of proving that Defendant was not substantially justified in pursuing its claim against Plaintiff in this matter. As such, an award of attorneys' fees and costs is precluded by 26 U.S.C.A. § 7430.

                                              s/ Arthur J. Schwab
                                              Arthur J. Schwab
                                              United States District Judge

cc:     All Registered ECF Counsel and Parties